UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HODA ASSADIAN,<br><br>                          Plaintiff,<br><br>v.<br><br>SCOTT M. OUDKIRK and ANTONY BLINKEN,<br><br>                        Defendants. | Case No.: 3:22-cv-00921-RBM-BGS<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**[Doc. 4]** |

On June 23, 2022, Plaintiff Hoda Assadian ("Plaintiff") filed a Petition for Writ of Mandamus and Complaint for Injunctive Relief asserting a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, and a claim under the Mandamus Act, 28 U.S.C. § 1361. (Doc. 1. ("Compl.").)  She seeks a Court order mandating Defendants Scott M. Oudkirk, Deputy Chief of Mission, U.S. Embassy in Turkey, and Antony Blinken, Secretary of the U.S. Department of State (collectively "Defendants") process her parents' immigration cases within fifteen calendar days.  (Compl. ¶ 40.)  Defendants have filed a Motion to Dismiss that has been fully briefed.  (Doc. 4 (Motion to Dismiss), Doc. 5 (Opp'n to Motion to Dismiss), Doc. 6 (Reply).[1])  For the reasons that follow, the Motion to Dismiss is **GRANTED**.

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

1

## I.  BACKGROUND

### A.  Complaint

The Complaint explains that in February 2020, Plaintiff filed I-130 visa petitions with U.S. Citizenship and Immigration Services ("USCIS") on behalf of her parents. (Compl. ¶¶ 1, 15.) Plaintiff hoped to obtain lawful permanent resident status for her parents so they could join her in the United States. (*Id.* ¶ 16.)

Her parents were interviewed in April 2022 by the U.S. Embassy in Turkey, and during the interview a consular officer examined and reviewed their applications. (*Id.* ¶ 17.) Following the interview, Plaintiff's parents' applications were placed "in so-called 'administrative processing.'" (*Id.* ¶ 18.) She alleges "[t]hese petitions have been approved, but the U.S. Embassy in Turkey has not finished processing these applications, which remain stuck, awaiting so-called 'administrative processing' while Plaintiff continues to suffer due to her ongoing separation from her parents with no apparent end in sight." (*Id.* ¶¶ 1, 18.) Plaintiff's parents have inquired as to the status of their visa applications without a "meaningful" response or update, and "[i]t is unclear what processes if any, the Defendants are actually working on." (*Id.* ¶¶ 19–20, 37.)

Plaintiff alleges the delay in the adjudication of her parents' applications has negatively impacted her and her parents. (*Id.* ¶ 21.) The Complaint explains that Plaintiff recently gave birth to her daughter without her parents in the United States for support. (*Id.*) Plaintiff explains she suffered from postpartum anxiety and depression and needed her parents, and that her daughter needs childcare for Plaintiff's return to work but Plaintiff is only confident in leaving her child with her husband or parents. (*Id.*)

### B.  Declarations

#### 1.  Theresa Repede

A Declaration provided in support of the Motion to Dismiss provides information from the Consular Consolidated Database ("CCD") regarding Plaintiff's petitions on behalf of her parents and her parents' visa applications. (Decl. of Theresa Repede ("Repede Decl.") [Doc. 4-1] ¶¶ 1–3.) The Declaration provides a chronology of Plaintiff's I-130

petitions filed on behalf her parents (*id.* ¶¶ 4–6, 8–10) and her parents' visa applications (*id.* ¶¶ 5–7, 10–11).

Consistent with the Complaint, the records in the CCD indicate that Plaintiff's I-130 petitions were both filed on February 17, 2020 and sought eligibility for her parents to apply for IR-5 visas as the parents of a United States citizen. (*Id.* ¶¶ 4, 8.) Both of the petitions were approved by U.S. Citizenship and Immigration Services ("USCIS")—one on May 5, 2020 and the other on June 11, 2020. (*Id.* ¶¶ 5, 9.) The National Visa Center ("NVC") received the approved petitions on May 7, 2020 and June 11, 2020, respectively, and assigned case numbers for processing at the U.S. Embassy in Ankara, Turkey, the location requested by Plaintiff. (*Id.*) Their cases "became documentarily qualified (meaning all necessary documents had been submitted) at the NVC" on February 8, 2021 and May 3, 2021. (*Id.* ¶¶ 6, 10.) This rendered Plaintiff's parents eligible to be scheduled for a visa interview appointment at the U.S. Embassy in Ankara. (*Id.*)

Both Plaintiff's parents were scheduled for interviews at the U.S. Embassy in Ankara on April 6, 2022. (*Id.*) Each appeared for their interview with a consular officer and applied for an immigrant visa. (*Id.* ¶¶ 7, 11.) "On the same date, the consular officer refused [their] visa application[s] under INA 221(g), 8 U.S.C. § 1201(g) for administrative processing." (*Id.*)

### 2. Hoda Assadian

Plaintiff's Declaration provides a summary of her parents' visa applications that is largely consistent with the information provided in the Repede Declaration. (Doc. 5-1 ¶¶ 4–13.) It additionally indicates that she received notice of the approval of her I-130 petitions on behalf of her parents on May 5, 2020 for her father and June 11, 2020 for her mother. (*Id.* ¶¶ 5–6.) Her Declaration also explains her unsuccessful efforts to reassign her parents' cases from the Embassy in Turkey to Armenia (*id.* ¶ 10) and expedite their interviews (*id.* ¶ 11). Plaintiff's Declaration explains that on April 6, 2022, the day of her parents' interviews, the Embassy in Turkey requested via email that her parents complete

a DS-5535 and answer questions in the email. (*Id.* ¶ 13.) She indicates they responded with the completed forms and answers. (*Id.*)

Plaintiff's Declaration also addresses the hardship she has faced in not having her parents in the United States to help support her as she faces health issues following the birth of her daughter and help providing childcare as she returns to work from maternity leave. (*Id.* ¶¶ 14–26.)

### C. Exhibits Submitted by Plaintiff

#### 1. Exhibit B – Notice of Refusal Under § 221(g)

Plaintiff's "Exhibit B [–] Notice of Refusal [§ ] 221(g)" provides Plaintiff's parents' Notices that their visa applications have been refused under § 221(g). (Doc. 5-2.) The forms submitted indicate her parents' visa applications have been "temporarily refused under section 221(g), . . . . However, this refusal may be overcome once the missing documentation and/or administrative processing have been met." (*Id.*) Both forms have a box selected for "Administrative Processing" that indicates they will be contacted by email "when your administrative process is completed." (*Id.*) Both forms also have "Passport" checked under a heading for "Please provide the following documents." (*Id.*) Her father's form additionally has a box checked indicating to "UPLOAD the required documents (marked below) under the CORRECT DOCUMENTS TYPE ON CEAC through https://ceac.state.gov." (*Id.*)

#### 2. Exhibit C – Refused Then Issued

Exhibit C is a collection of images, which are screen shots of other peoples' visa application statuses. (Doc. 5-3.) They show visa applications that were that at some point refused, as Plaintiff's parents' visa applications have been here, eventually can be issued. (*Id.*)

## II.   LEGAL STANDARDS

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, Rule 12(b)(6) for failure to state a claim.

### A. Rule 12(b)(1)

Rule 12(b)(1) allows a defendant to move to dismiss a complaint based on a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The party invoking a court's jurisdiction, here Plaintiff, bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Defendants argue the APA and Mandamus Act do not provide this Court with jurisdiction (Doc. 4 at 6–9), however, except for standing, Defendants do not explicitly explain why the case should be dismissed for lack of subject matter jurisdiction rather than for failure to state a claim.

### B. Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts generally do not consider matters outside the pleadings when assessing the sufficiency of the complaint, but "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994), *overruled on other*

*grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)) (additional citations omitted). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

Here, the parties both submitted additional information in support of their briefing—Defendants' submission of CCD information on Plaintiff's parents' visa applications and Plaintiff's submission of her own declaration, the Notices of Refusal under § 221(g), and other applicants' visa records that were refused and later issued. (*See supra* I.B, I.C.) Plaintiff's claims necessarily rely on the Notices of Refusal because they are central to the status of Plaintiff's parents' visa applications, including when they were refused and the Notices' indication of administrative processing. And, as reflected below in summarizing the history and status of Plaintiff's parents' visa applications, (*see infra* III.A (citing declarations)) Plaintiff's Declaration and the Repede Declaration do not vary in any significant respect from the allegations of the Complaint on a relevant basis. Therefore, the Court has considered these declarations, but only to the extent consistent with the allegations of the Complaint.

### III.  DISCUSSION

The primary issue presented here is whether Plaintiff's parents' visa applications have been unreasonably delayed. Because this issue is central to whether Plaintiff has sufficiently pleaded her claims for relief under the Mandamus Act and the APA, the Court's analysis focuses on Defendants' challenge under Rule 12(b)(6).[2]

---

[2] Defendant seeks dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) but does not specifically explain why or how the Court should dismiss under Rule 12(b)(1) rather than 12(b)(6), except with regard to standing. (Doc. 4 at 7–9 (concluding sentences on APA and Mandamus sections ask for dismissal under Rule 12(b)(1), but do not analyze jurisdiction). However, it seems unlikely the Court lacks subject matter jurisdiction over Plaintiff's claims. *See Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (The plaintiff's allegations they "are entitled to relief under the APA, a federal statute, because the

Before addressing unreasonable delay under the APA and Mandamus Act, the Court briefly summarizes the status of Plaintiff's parents' visa applications within the applicable statutory framework.

### A.  Status of Plaintiff's Parents' Visa Applications

"To obtain permanent resident status for qualifying foreign relatives . . . a U.S. citizen must submit a Form I-130 Petition for Alien Relative (petition) to U.S. Customs and Immigration Services (USCIS)." *Ortiz v. U.S. Dep't of State*, No. 1:22-CV-00508-AKB, 2023 WL 4407569, at *1 (D. Idaho July 7, 2023) (citing 8 U.S.C. § 1154(a), 8 C.F.R. § 204.1(a)).  "If USCIS approves the petition, it forwards the petition to the State Department's National Visa Center (NVC)." *Id.* (citing *Nusrat v. Blinken*, No. 21-2801, 2022 WL 4103860, at *1 (D. D.C. Sept. 8, 2022)).  Here, Plaintiff's I-130 petitions were approved by USCIS on May 5, 2020 and June 11, 2020.  (Compl. ¶¶ 1, 14–15;[3] Repede Decl. ¶¶ 5, 9; Hoda Decl. ¶ 5.)  Those USCIS-approved petitions were then sent to the NVC and the visa application numbers were assigned to each parent's visa application.  (Hoda Decl. ¶ 7; Repede Decl. ¶¶ 5, 9.)

The next step is Plaintiff's parents' submission of their visa applications.  After the I-130 petition is approved and the approved petition sent to the NVC, "[t]hen, the foreign national must complete the visa process with the U.S. consulate in [their] country, which includes submitting a Form DS-260 Immigrant Visa Application (application) and other documentation and appearing for a visa interview with a consular officer." *Ortiz*, 2023 WL 4407569, at *1 (citing *Nusrat*, 2022 WL 4103860, at *1).  Here, Plaintiff's parents'

---

[Executive Office for Immigration Review] failed to perform its duties under federal regulations within a reasonable time" provided subject matter jurisdiction).

[3] Plaintiff's Complaint makes two references to approval.  Each is preceded by Plaintiff's parents' visa application numbers.  This ordering of the allegations might be misinterpreted to suggest her parents' visa applications received some approval, rather than Plaintiff's I-130 petitions on their behalf.  However, as reflected in the context of the statutes, it is apparent that the only approval obtained was on this initial step, *i.e.* Plaintiffs' I-130 petitions.

visa applications were assigned to Ankara, Turkey at Plaintiff's request, although Plaintiff indicates she later unsuccessfully attempted to have her parents' visa applications moved to Yerevan. (Hoda Decl. ¶ 10, Repede Decl. ¶¶ 5, 9.) Plaintiff's parents had their required interviews with a consular officer on April 6, 2022. (Compl. ¶ 17.[4])

"Thereafter, the consular officer must either issue or refuse the visa." *Ortiz*, 2023 WL 4407569, at *1 (citing *Nusrat*, 2022 WL 4103860, at *1 and *Arab v. Blinken*, 600 F. Supp. 3d 59, 62–63 (D. D.C. 2022)). Plaintiff's parents' visa applications were refused on April 6, 2022 pursuant to § 221(g), the same day as their interviews. (Compl. ¶ 18, Pl.'s Ex. B, Notices of Refusal 221(g).)

Eleven weeks later, Plaintiff filed this action. (Doc. 1.) As explained in more detail below in addressing the sufficiency of Plaintiff's claims, the question here is whether an eleven-week delay in issuance of a *final* decision on Plaintiff's parents' visa applications was an unreasonable delay.

**B.     APA and Mandamus**

"The analysis for relief under the Mandamus Act and the APA is virtually the same." *El Centro Reg'l Med. Ctr. v. Blinken*, Case No. 3:21-cv-0361-DMS-RBM, 2021 WL 3141205, at *4 (S.D. Cal. July 26, 2021); *Ortiz*, 2023 WL 4407569, at *5 ("A claim under the APA is very similar to a claim for mandamus under § 1361."). The similarity of the claims is also apparent in Plaintiff's allegations in this case. Plaintiff relies on the same regulation and statutes to attempt to establish Defendants' duty to issue a final decision on the visa applications under the APA and Mandamus Act. (Compl. ¶¶ 2, 23–32 (APA); Compl. ¶¶ 2, 35–38 (relying on APA argument for Mandamus claim).) "Because the relief

---

[4] Plaintiff alleges that "[a]fter the interview [her parents] *discovered* that their visa applications were being placed in so-called 'administrative processing,'" implying they were not informed of the refusal by the notices dated the same day. (Compl. ¶ 18 (emphasis added).) However, Plaintiff herself titles these documents "Notice of Refusal 221(g) issued to Plaintiff's parents," indicating they were informed their visa applications were refused. (Pl.'s Ex. B, Notices of Refusal 221(g).)

sought is essentially the same, in the form of mandamus," and the basis for both claims is the same, the Court primarily focuses its analysis on the APA claim, but also briefly addresses the Mandamus claim. *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) ("Because the relief sought is essentially the same, in the form of mandamus, we elect to analyze [Plaintiff's] entitlement to relief under the APA."); *see also El Centro Reg'l Med. Ctr.*, 2021 WL 3141205, at *4 (Noting "in certain circumstances, a valid APA claim can exist where a mandamus claim fails.").

      **1.    APA**

"[T]he APA allows a court to compel 'agency action unlawfully withheld or *unreasonably delayed*.'" *Indep. Mining Co., Inc.*, 105 F.3d at 507 (quoting 5 U.S.C. § 706(1) (APA) (emphasis added)). Here, the issue is whether a final decision on Plaintiff's parents' visa applications has been unreasonably delayed.

"A court can compel agency action under this section only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64, (2004)). "The agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" *Id.* at 1075–76 (quoting *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010)). Defendants argue Plaintiff's APA claim must be dismissed because no statutory or regulatory provision provides a standard for reviewing how long it should take to "re-adjudicat[e]" visa applications and that the Complaint does not plausibly allege an unreasonable delay. (Doc. 4 at 6; Doc. 6 at 2–4.)

      **a)    Absence of Time Frames**

The Court is not persuaded the absence of a specific time frame for Defendants to act alone requires dismissal or that the status of the visa applications—refused—would necessarily always precludes review. However, as explained below, the Court is persuaded that the Complaint does not plausibly allege unreasonable delay.

Plaintiff relies on requirements in 8 U.S.C. § 1202(b), 5 U.S.C. § 555(b), and 22 C.F.R. § 42.81(a) as establishing a non-discretionary obligation to adjudicate Plaintiff's parents' visa application. (Doc 5 at 10–13; Compl. ¶¶ 25–29.) Plaintiff's Complaint relies on § 42.81(a) and § 555(b) as creating a clear and non-discretionary duty to adjudicate visa applications. (Compl. ¶¶ 25–29; Doc. 5 at 11–12.) Plaintiff's Opposition raises these provisions and additionally argues 8 U.S.C. § 1202(b) also creates a clear and non-discretionary duty. (Doc. 5 at 11–12.)

Each of these provisions does provide some form of directive, but none of them contains a time frame in which the agency must act. Section 555(b) indicates that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a *reasonable time*, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The portion of § 1202(b) Plaintiff relies on provides that "[a]ll immigrant visa applications shall be reviewed and adjusted by a consular officer." Similarly, § 42.81(a) indicates "the consular officer must issue the visa, refuse the visa under INA 212(a) *or 221(g)* or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa." 22 C.F.R. § 42.81 (emphasis added). Defendants have arguably already acted under § 42.81(a) because they have refused the visa applications. (Pl's Ex. B, Notices of Refusal 221(g).) However, it is clear from the regulations and the § 221(g) Notices Plaintiff's parents received that the refusal of their visa applications is not final and further action is anticipated. This indicates, at a minimum, that some action by the agency is still outstanding.

The absence of any time frame for taking these actions could suggest a lack of any mandatory duty to act. *See Ortiz*, 2023 WL 4407569, at *6 (Noting § 42.81(a) "provides no timeframe, expedited or otherwise, for taking these actions and, thus, does not establish a mandatory duty to expedite [plaintiff's] visa interview."). However, other courts have found a nondiscretionary duty to at some point adjudicate visa applications can exist in the absence of any time frame. *See Kassem v. Blinken*, No. 1:21-cv-1400-DAD-HBK, 2021 WL 4356052, at * (E.D. Cal. Sept. 24, 2021) (collecting cases).

Here, the Court need not determine whether there can be a "specific and unequivocal command . . . to take a discrete action" without a time frame dictated in statute because even if there is, Plaintiff has not plausibly plead a final decision has been unreasonably delayed. *Vietnam Veterans of Am.*, 811 F.3d at 1075; *Lajin v. Radel*, Case No. 19cv52-MMA (BLM), 2021 WL 3388363, at *3 (S. D. Cal. July 26, 2019) ("Assuming without deciding that the 45-day rule is a specific, unequivocal command, the Court finds Defendants have not unreasonably delayed in complying with the command" and applying *TRAC* six-factor test). Even if the Court assumes that the regulation and statutes Plaintiff relies on constitute "specific and unequivocal command[s] placed on the agency to take a discrete agency action" despite the absence of a time frame in which to act, the Court finds Plaintiff has not plausibly alleged Plaintiff's parents' visa applications have been unreasonably delayed. Only eleven weeks passed between the refusal of their visa applications and Plaintiff's filing of the Complaint. Even without accounting for the delays associated with backlogs of immigration matters from Covid closures (Doc. 4 at 3–4), this is not an unreasonable amount of time for Plaintiff's parents' visa applications to be pending for a final decision.

### b)  No Unreasonable Delay

"To determine whether an agency's delay is unreasonable under the APA, we use the *TRAC* factors—the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*") (citing *Indep. Mining*, 105 F.3d at 507); *see also Arab v. Blinken*, 600 F. Supp. 3d 59, 68 (D. D.C. 2022) (Applying *TRAC* factors and finding complaint fails to state a claim that action on plaintiff's application after 30 months had been unreasonably delayed). The factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason;'
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

>(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>(6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

*Vaz*, 33 F.4th at 1137 (quoting *TRAC*, 750 F.2d at 80). The Court first notes that these factors simply provide guidance on issues to consider in evaluation of unreasonable delay. A certain number of them need not weigh in a particular direction to find unreasonable delay.

### (1)   First and Second Factors

As to the first and second factors, often considered together and the first being the most important, Plaintiff argues they weigh in her favor because the delay is not reasonable, and Defendants just put her parents visa applications on the back burner. (Doc. 5 at 21–22.) Defendants point out that there are not time limits dictated in any of the provisions Plaintiff relies on. (Doc. 6 at 3.)

The delay here has been only eleven weeks. Eleven weeks is not unreasonable. *See generally Arab*, 600 F. Supp. 3d at 70 (Explaining that courts often look to cases when there are not timelines in statutes or regulations and summarizing cases finding immigration delays of five to seven years are unreasonable and those between three and five years are often not); *Ortiz*, 2023 WL 4407569, at *8 (collecting cases finding delays of 29 months, four years, and two years were not unreasonable). Additionally, Plaintiff does not point this Court to any case finding a violation of the APA in any immigration context from a delay this short. As one court has explained, "[b]ecause the period of delay is the strongest factor, and slightly more than a year is drastically short of what constitutes an unreasonable delay in the Ninth Circuit, only very substantially longer delay could constitute sufficient factual allegations to implicate § 706(a)'s unreasonable delay or § 555(b)'s reasonable time." *See Yavari v. Pompeo*, Case No. 2:19-cv-02524-SVW-JC, 2019 WL 6720995, (C.D. Cal. Oct. 10, 2019) (Explaining that "[o]nly the passage of a

substantial[ly] longer period of time can cure this issue as a matter of law" and dismissing APA and mandamus claims).

### (2) Third, Fourth, and Fifth Factors

Plaintiff argues the third and fifth factors, human health and welfare at stake and extent of interests prejudiced by delay, weigh in her favor because she needs her parents' help with her health issues and childcare. (Doc. 5 at 23–24.) As to the fourth factor, the effect of expediting delayed action on other agency activities, Plaintiff asserts it is not her fault the agency lacks sufficient resources, and that burden should not be shifted to her. (Doc. 5 at 22–23.) Defendants respond that Plaintiff does not allege a risk to public health or welfare, it is implausible Plaintiff cannot find safe skilled childcare, and any perceived delay is reasonable under the circumstances. (Doc. 6 at 3.)

There is certainly an impact on Plaintiff in not having her parents' visas issued because it means her parents are not here to support her as she faces health issues and to provide childcare. However, the Court cannot find these are unique or particularly pressing needs that justify prioritizing Plaintiff's parents' visa applications or altering the routine course of further evaluation of their refused visa applications. Ordering a final decision on Plaintiff's parents' visa applications immediately would inevitably divert agency resources to their applications at the expense of others when the delay here has not been very long. *See Ortiz*, 2023 WL 4407569, at *8 ("Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain.") Given the rather brief delay between the refusal of the applications subject to further processing and Plaintiff's filing of this action, ordering the agency to issue a final decision in two weeks would necessarily put Plaintiff's parents' visa applications ahead of others. That is certainly not warranted after such a brief delay.

///
///
///

### (3) Sixth Factor

The sixth factor has no bearing here. This factor cautions that courts are not required to find impropriety behind a delay to find the delay unreasonable. Because that is not an issue here, this factor does not impact the Court's analysis.

Considering the first through fifth factors, the Court finds Plaintiff has not plausibly alleged unreasonable delay in the issuance of a final decision on Plaintiff's parents' visa applications. There is no time limit in regulation or statute that requires a final decision on a refused visa application and eleven weeks is not a lengthy delay. Additionally, while the Court acknowledges the negative impact on Plaintiff in not having her parents support, requiring an immediate decision on her parents' applications would necessarily put them ahead of others without justification. The Complaint fails to state a claim under the APA because it does not plausibly allege unreasonable delay.

### 2. Mandamus Act

"The [Mandamus Act] provides district courts with mandamus power 'to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. § 1361 (Mandamus Act)). "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003); *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003); *see also Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) ("[T]he remedy of mandamus is a drastic one to be invoked only in extraordinary situations.").

As discussed above, APA and Mandamus claims are nearly identical and, here, Plaintiff's claims to unreasonable delay are based on the same underlying federal statutes and regulation for both claims. However, the Court briefly addresses the Mandamus claim. Plaintiff cannot demonstrate that her entitlement to an immediate final decision on her

parents' visa applications is "clear and certain" or "so plainly prescribed as to be free from doubt." *Kildare*, 325 F.3d at 1084. There is no time frame in which Defendants are prescribed to act and, as discussed at length above, there has been no unreasonable delay that would make clear immediate action is required. *El Centro Reg'l Med. Ctr.*, 2021 WL 3141205, at *3 ("Where the agency in charge of the adjudication fails to render a decision within a *reasonable* time, as required by § 555(b), the court has the power to grant a writ of mandamus compelling an adjudication.") (quoting *Am. Academy of Religion v. Chertoff*, 463 F. Supp. 2d 400, 420 (S.D. N.Y. 2006) and *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1998)) (emphasis added). Plaintiff has not stated a plausible Mandamus claim because the delay is not unreasonable.

Because Plaintiff has not plausibly alleged claims under the APA or the Mandamus Act, these claims are dismissed under Rule 12(b)(6) for failure to state a claim.[5]

### IV.   CONCLUSION

The Motion to Dismiss is **GRANTED** and the case is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

Dated: September 25, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[5] Defendants additionally argued Plaintiff's claims should be dismissed for lack of standing (Doc. 4 at 5–6), failure to plead exhaustion (*id.* at 9–10), and consular non-reviewability (*id.* at 10–11). However, given the Court's dismissal of both claims for failure to state a claim, the Court need not address these additional issues.